UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TINA LEHMAN, INDIVIDUALLY                          CIVIL ACTION
AND ON BEHALF OF THE ESTATE
OF GARY NEVILLE AND JUDITH
NEVILLE

VERSUS                                             NO. 19-13005

ONSTAR, LLC, NEW ORLEANS                           SECTION "R" (1)
POLICE DEPARTMENT


## ORDER AND REASONS


Before the Court is plaintiffs' motion to remand this action to state

court and for attorneys' fees.[1]  Because plaintiff properly joined a defendant

from the same state, the Court grants the motion to remand.


## I.    BACKGROUND

This case arises from a tragic automobile accident.  On August 18,

2018, Gary Neville was involved in a motor accident on Interstate 10.[2]

Neville's car veered off the interstate and came to rest in a body of water.[3]

---

[1]      R. Doc. 15.
[2]      R. Doc. 1-8 at 5 ¶ 7.
[3]      *Id.* at 5 ¶ 8.

Neville's car was completely submerged, and he was pronounced dead on the scene.[4]

Plaintiffs allege that Neville's vehicle was equipped with an OnStar subscription, which can be used to provide assistance to drivers.[5]  Plaintiffs further allege that Neville contacted OnStar and requested emergency relief, but that OnStar failed to properly respond to Neville's request for help by contacting the New Orleans Police Department or by giving them incorrect directions.[6]  In the alternative, plaintiffs allege that NOPD caused Neville's death by acting negligently in response to OnStar's call.[7]

Defendants removed this action to federal court on the grounds that NOPD is an improper party and that complete diversity exists between the plaintiffs and OnStar.[8]  Plaintiffs move to remand the action to state court, arguing that NOPD is a proper party and its presence in the suit defeats complete diversity.

---

[4]     *Id.*
[5]     *Id.* at 5-6 ¶¶ 9-10.
[6]     *Id.* at 6 ¶¶ 11, 13.
[7]     *Id.* at 6-7 ¶ 15.
[8]     R. Doc. 1.

## II.    LEGAL STANDARD

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  "[T]he removing party bears the burden of . . . show[ing] that federal jurisdiction exists."  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).  And "[t]he jurisdictional facts that support removal must be judged at the time of removal."  *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).  In assessing whether removal is appropriate, the Court is guided by the principle that removal statutes should be strictly construed, because federal courts are courts of limited jurisdiction.  *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  Accordingly, "[a]ny ambiguities are construed against removal."  *Id.*

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants.  *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  Having a plaintiff and a defendant who are citizens of the same state would ordinarily destroy complete diversity.  *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004).

Therefore, when a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332.

A defendant may remove, though, by showing that the nondiverse party was joined improperly. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). But "[t]he party seeking removal bears a heavy burden." *Id.* at 574. A defendant can establish improper joinder by demonstrating either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). To determine improper joinder under the second element, the Court asks "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

"In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.'" *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th

Cir. 2010) (per curiam) (quoting *Smallwood*, 385 F.3d at 573). The scope of the inquiry for improper joinder, though, can be even broader than that for Rule 12(b)(6), because where a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," the Court may "pierce the pleadings and conduct a summary inquiry." *See Smallwood*, 385 F.3d at 573; *see also Menendez*, 364 F. App'x at 69.

In conducting this inquiry, the Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. So, too, must the Court resolve all "contested issues of fact" and all "ambiguities of state law" in favor of the party opposing removal. *See id.*; *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 813 (5th Cir. 2011).

## III. DISCUSSION

OnStar argues that NOPD is an improper party to this case for three reasons: (1) NOPD is shielded by discretionary immunity, (2) NOPD did not owe Neville a duty, and (3) any breach of NOPD procedure was not a cause-in-fact of Neville's death. The Court addresses each argument in turn.

## A.    Discretionary Immunity

Louisiana law states: "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. R.S. 9:2798.1(B).  This law is not applicable when the acts or omissions "are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists," or as to acts that constitute "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."  La. R.S. 9:2798.1(C).

"When the doctrine [of discretionary immunity applies,] the governmental employee or agency is insulated from liability; when it does not apply, the employee or agency is liable for any negligence."  *Gleason v. Nuco, Inc.*, 774 So. 2d 1240, 1242 (La. App. 1 Cir. 2000).  And in order to be shielded from liability, the public entity or officer must articulate a social, economic, or political consideration surrounding the officer's actions. *Misuraca v. City of Kenner*, 802 So. 2d 784, 789 (La. App. 5 Cir. 2001); *see also Gregor v. Argenot Great Cent. Ins. Co.*, 851 So. 2d 959, 968 (La. 2003) (rejecting an argument that discretionary immunity applied because it was "not a decision grounded in social, economic, or political policy").  Indeed,

the statute "does not protect against legal fault or negligent conduct at the operational level, but only confers immunity for *policy decisions*; i.e., decisions based on social, economic, or political concerns." *Chaney v. Nat. R.R. Passenger Corp.*, 583 So. 2d 926, 929 (La. App. 1 Cir. 1991).

OnStar argues that discretionary immunity applies because the NOPD manual leaves some elements of choice to police officers, and thus offers them discretion in how they carry out their duties. OnStar argues specifically that the police would have had discretionary immunity because they would have had the discretion to choose whether or not to engage in a water rescue mission.

But OnStar ignores that discretionary immunity applies only to decisions based on social, economic, or political considerations. It is not inconceivable that a decision to make an aquatic rescue involves discretion that can be grounded in economic or broader public safety concerns. But here, neither OnStar, nor New Orleans, has articulated such social, economic, or political considerations as the basis for the action or inaction of the NOPD. Moreover, Louisiana courts regularly allow actions against police departments based on whether police officers executed their duties negligently. *See, e.g.*, *Misuraca*, 802 So. 2d at 789 (allowing a suit against the city of Kenner that alleged negligence against an officer in how he secured

7

an accident scene to proceed because the city did not "articulate[] any social, economic, or political considerations surrounding the police officer's actions in handling the immediate investigation or securing the accident scene"); *Saine v. City of Scott*, 819 So. 496, 501 (La. App. 3 Cir 2002) (allowing a suit against the city of Scott in which a plaintiff alleged injury from handcuffs used during his arrest to proceed because the proper use of handcuffs on an individual involved non-discretionary duties not grounded in social, economic, or political concerns).

And many of plaintiffs' allegations regarding NOPD's purported negligence—such as failing to assess the most appropriate route to the crash—point to operational, rather than discretionary, actions. And discretionary immunity does not apply to operational actions. *Saine*, 819 So. 2d at 501. The Court therefore finds that discretionary immunity does not act as a bar to plaintiff's claims.

## B. Duty

OnStar next argues that plaintiff fails to adequately plead that NOPD had a duty to Neville, and that even had plaintiffs adequately alleged a duty, such a duty would never have attached. Although plaintiffs do not specifically allege NOPD owed a duty to Neville in their complaint, the facts

they plead regarding NOPD's alleged breach assume a duty existed.[9] And as described below, plaintiffs' factual allegations could give rise to a duty that attached to NOPD. Moreover, plaintiffs specifically argue such a duty exists in their motion to remand. Thus, in piercing the pleadings and conducting a summary inquiry, as is appropriate in improper joinder analysis, the Court cannot find recovery impossible on these grounds.

Under Louisiana law, although a law enforcement agency does not have a legal duty to "physically respond to every threat which a citizen reports to it, there must be some analysis made of each reported threat depending on the circumstances of the particular case." *Whatley v. Caddo,* 661 So. 2d 557, 560 (La. App. 2 Cir. 1995) (citing *Nichols v. Nichols,* 556 So. 2d 876, 878-79 (La. App. 2 Cir. 1990)). "It may be that the result will be a duty to further inquire depending on the particular circumstances and, depending on the circumstances, it may be that there will be a duty to further investigate." *Id.* at 561. "Of course, a duty to physically respond may also exist, depending on the circumstances." *Id.*

The question of duty thus largely turns on the question of factual knowledge of the police. *See Nichols,* 556 So.2d at 879 ("Thus in the instant case, the duty of the Minden police would seem to center around the factual

---

[9]     *See* R. Doc. 1-8 at 6-7 ¶ 15.

knowledge of the police with respect to Mr. and Mrs. Nichols."); *Whatley*, 661 So. 2d at 561 ("[T]he defendant's duty here seems to center around the factual knowledge of the deputy with respect to plaintiffs and their deceased husbands."). Assuming OnStar did contact NOPD, as plaintiffs allege in the alternative,[10] NOPD would have factual knowledge of Neville's life-endangering situation. And at that point, a duty could have attached to NOPD to further inquire, and respond appropriately to Neville's distress. NOPD's failure to carry out such an inquiry or response may constitute the breach of these duties. The Court therefore cannot find that there is "no possibility of recovery by the plaintiff[s]," *Smallwood*, 385 F.3d at 573, as NOPD may well have owed Neville a duty under the facts alleged here.

## C. Cause-In-Fact

Finally, OnStar argues that plaintiffs cannot have a reasonable basis for a claim against NOPD because they will be unable to show that NOPD's actions were a "but for" cause of Neville's death. To succeed on its claim, plaintiff will have to show that a failure of the NOPD made a difference in Neville's ability to survive the crash. OnStar suggests that "[s]uch proof would have to include, at a minimum, that Neville could stay alive buckled in the seat of a bayou long enough for the police officers to arrive on the

---

[10]     R. Doc. 1-8 at 6 ¶ 15.

scene, locate him in the pitch black dark, and assemble and deploy a team of divers to the scene in the small hours of the morning to rescue him."[11]

But accepting OnStar's argument would require the Court to assume too much at this stage. For example, to accept that plaintiffs could not state a claim because NOPD's actions were not a cause-in-fact of Neville's death would require the Court to make assumptions about (1) how long Neville's car was in the water before it was completely submerged, (2) how long NOPD would have taken to get to the accident and find Neville, and (3) NOPD's actions upon locating Neville. Such factual assumptions are inappropriate at this stage, where the focus is solely on plaintiff's allegations. Given these numerous factual assumptions OnStar asks the Court to make, even under the summary inquiry that is appropriate when considering improper joinder, the Court cannot find at this stage that there is "no possibility of recovery" by plaintiffs against NOPD. *Smallwood*, 385 F.3d at 573.

### D.   Request for Attorneys' Fees

Plaintiffs also request attorneys' fees and costs. Under 28 U.S.C. § 1447(c), a federal court ordering remand of an action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "There is no automatic entitlement

---

[11]   R. Doc. 20 at 13.

to an award of attorney's fees" if the court determines that the removal was legally improper; instead, the decision whether to award attorneys' fees is left to the discretion of the trial court. *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).

In order to determine whether an award of attorneys' fees is appropriate, the court considers "whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.* at 293. Here, defendants had an objectively reasonable basis to remove this case based on the authorities cited in their Notice of Removal and their oppositions to plaintiffs' motion to remand. While defendants' arguments against removal are ultimately unpersuasive, they are not so unreasonable as to warrant an award of attorneys' fees to plaintiff. *Cf. id.* at 293 (declining to award attorneys' fees to non-removing party even though removal was legally improper, because removing party "could conclude from th[e] case law that its position was not an unreasonable one").

## IV. CONCLUSION

For the forgoing reasons, the Court GRANTS plaintiffs' motion to remand. Plaintiffs' request for attorneys' fees is DENIED. OnStar's motion

to dismiss for lack of jurisdiction, and NOPD's motion to dismiss for failure to state a claim, are DISMISSED for lack of jurisdiction.

New Orleans, Louisiana, this __5th__ day of March, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE